JEMISON v. COZENS.

1. When slaves have been levied on and discharged by the execution of a forthcoming bond under the statute, and they are not delivered to the sheriff pursuant to the condition of the bond, but that is returned forfeited, and thereupon an execution is issued on it against the principal and surety; upon which the surety delivers the slaves, which are afterwards released by the fiat of the Chancellor, on a bill filed by the wife of the defendant in execution, on proper security; this is no ground to the surety for restraining the plaintiff from making a levy on his property, to satisfy the execution issued on the forth-coming bond.
2. It is no defence to the surety in a forth-coming bond, that the property levied on does not belong to the principal.
3. When property is levied on as belonging to the principal, and is claimed by another, the plaintiff may lawfully proceed to have satisfaction, by causing another levy to be made on the property of the surety, and this right is declared by statute.

Appeal from the Court of Chancery for the fifth District of the Northern Division.

The bill alleges, that Cozens, on the 6th August, 1839, procured an attachment at his own suit, to be levied on certain slaves, as the property of one Calhoun, and having afterwards, in March, 1841, recovered judgment on the attachment, he caused an order of sale or execution to be issued. This was plac-

ed in the hands of the sheriff of Tuskaloosa county, on the 7th April, 1841, and he, by virtue of it, seized and took the slaves into his possession; whereupon, the said Calhoun replevied the property by executing a forthcoming bond, conditioned to deliver the slaves on the 1st Monday of June, thereafter. To this bond, the complainant was Calhoun's surety.

The slaves were not delivered to the sheriff on the 1st Monday of June, as required by the condition of the bond, which was consequently returned forfeited: and afterwards, an execution was issued against Calhoun, and also against the complainant, as his surety.

On the 21st June, the complainant delivered the slaves to the sheriff, who levied the execution that issued on the bond upon the slaves, and advertised them for sale. It is also alleged that these slaves are of sufficient value to satisfy the execution.

The bill then alleges that Mrs. Calhoun, the wife of the defendant in execution, commenced proceedings by bill in equity, against Cozens, asserting that the slaves levied on were her sole and separate estate, and not in any manner, liable to the debts of her husband, and prayed an injunction to restrain Cozens from selling them under his execution. It also alleges that proceedings were had on this suit; that an injunction was allowed by the Chancellor, upon the execution of a bond payable to Cozens, and conditioned in conformity with the fiat, which, however, is not set out.

The bill asserts that Cozens has instructed the sheriff to seize property belonging to the complainant, and to sell the same in satisfaction of the same execution; which the complainant believes the sheriff will do, unless restrained by injunction, which is prayed for.

The injunction was awarded and the defendant demurred to the bill. The Chancellor sustained the demurrer and dismissed the bill. From this decree the complainant, appealed and here insists that it is erroneous.

PECK, for the plaintiff in error, made two points:

1. That by delivering the property to the sheriff on the execution issued on the forthcoming bond, the complanant is entitled

in equity, to a discharge from the legal penalty of the bond. Roberts v. Henry, 2 Stewart, 42; Laughlin v. Ferguson, 6 Dana, 111.

2. That the levy by the sheriff on the property named in the bill being sufficient to satisfy the execution, operates as a discharge of the execution until it is determined finally that the property is not liable to be sold under the levy. Hoyt v. Hudson, 12 John 207; 1 Cowen 47 note, a; Clark v. Withers, 2 Ld. Raymond, 1072; exparte Lawrence, 4 Cowen, 417.

W. B. MARTIN, contra. contended, that the forfeiture of the condition of the bond, gave to Cozens an absolute right to pursue the complainant, which right could only be satisfied by payment of the amount of the execution. This right being given by statute, cannot be taken away in consequence of any hardship which may be supposed to result to the security. Aiken's Digest. 171, § 64; Sadler v. Glover, 5 Dana, 551; Syms v. Montague, 4 H. & M. 180.

Another reason why the subsequent delivery even of the same property, ought not to discharge the surety is, that the lien of the execution is discharged by the forfeiture of the bond, and other liens may have attached, or rights accrued, which the plaintiff in execution ought not to be compelled to litigate. Lusk v. Ramsay, 3 Mun. 417.

The levy of the sheriff having been released by the order of a competent tribunal, is, so far as the complainant is concerned, as if it had never been. This makes a distinction, which renders it necessary to examine how far a levy is a satisfaction, when it produces nothing to the plaintiff in execution.

GOLDTHWAITE, J.—The first position assumed by this bill, is that the condition of the forthcoming bond, was substantially complied with when the slaves were delivered to the sheriff, although this delivery was on a day subsequent to that stipulated.

This would be tenable, if the bond in this case had been entered into in consequence of any agreement between the parties, but it ceases to be so, when we consider the bond as imposed on the plaintiff in execution by statute, and that he is never consulted with respect to its execution. Indeed, in most cases, the effect of taking such a bond, is to delay the plaintiff

in the collection of his debt, and no security additional to what he had before is given him. This will be evident, when it is considered that the plaintiff in execution has procured a levy to be made by which his money is secured, and this levy though not released or discharged by the taking of the bond, may be, and possibly is, by its forfeiture. McRae v. McLean, 3 Porter 138 ; Lusk v. Ramsay, 3 Mun. 417. The plaintiff therefore, is placed in the condition in which he can receive no possible benefit, if the condition of the obligation is complied with, because the property then stands in the hands of the sheriff, in the precise condition that it was in when his possession was divested by the execution of the bond.

These considerations, very possibly induced the peculiar legislation on this subject, which authorises an execution to issue against principal and security, whenever the condition of the bond is not complied with, and that too, for the amount of the debt, without any reference to the value of the property levied on. Aikin's Digest, 171, §'s 64 & 66.

The statute declares that when the bond is forfeited and so returned to the proper officer, it shall be the duty of the clerk to issue execution thereon against all the obligors, and that gives to the plaintiff the same right to proceed against the sureties, as if he had obtained a judgment.

If a Court of Equity is authorised to consider time as immaterial in this particular instance, it might well be doubted if the statute would not be rendered inoperative, because no line can then be drawn which would show, with precision, the period when the right of the plaintiff became absolute. But, independent of this, it is very questionable whether the lien of the execution is not discharged by the forfeiture of the bond, so that the property previously levied on would be subject to any other lien and might also be changed by sale. This was held in the case of Lusk v. Ramsay, and seems to be inferable from that decided in this Court of McRae v. McLane, before cited.

These reasons lead us to the conclusion that it is no ground for relief in equity, that the property was delivered at a subsequent period than the day mentioned in the bond.

2. Most intimately connected with this ground of defence, is the other, asserted in the bill, which, without asserting that

the property belongs to Mrs. Calhoun, evidently was intended to furnish a foundation for such an inference.

If it was admitted that such was the state of the title, we think it affords no reason for equitable interposition, unless the levy was contrived in fraud, with a knowledge on the part of the plaintiff at law, and with the intention of inducing some one to become bound as security. And even in such a case, if the knowledge of the state of the title came to the security previous to the day appointed for the delivery of the property, it may be considered as very questionable whether such a defence could be urged, because the property could be delivered and a claim interposed on the day of sale.

In Virginia, where a statute very similar to our own, is in force, it has been decided, it is no ground for relieving either the principal or sureties to a forthcoming bond, that the former was not the owner of the property specified therein. Syme v. Montague, 4 H. & M. 180.

The reason for the decision, and it seems to be conclusive, is, that the obligors to the bond are estopped, so long as it remains in force, from setting up an adversary title in another. We have been referred to the case of Laughlin v. Ferguson, 6 Dana, 111, in which a different conclusion is supposed to be arrived at by the Court of Appeals of Kentucky, under a similar statute; but we find the question was not decided, though such is evidently the impression of the Judge delivering the opinion of the Court. The judgment is given on another ground, and we are not permitted to give the same weight to a casual expression, as is due to a deliberate decision. Indeed the whole current of authority in that Court is adverse to such a defence. In the case of Sadler v. Glover, 5 Dana, 551, the bond was for the delivery of a horse, saddle and martingale; the horse was offered to be delivered and was afterwards sold by the debtor, for fifty dollars. The judgment was for two hundred dollars, besides interest and costs. It was held that relief could not be had, and it was said if the levy had been alone on the saddle and martingale, the omission to deliver them would make the surety responsible for the whole debt; therefore he was so as the case stood. To the same effect is the case of Syme v. Montague, before cited, where the Court say whether the pro-

perty was worth much or little, the not producing it, subjected the sureties to the payment of the whole debt.

It is possible there may be cases of fraud or mistake in which a Court of Equity would be authorised to grant relief, but no such ground is laid in the present bill, nor is any excuse shown for not performing the condition of the bond. Under these circumstances, we perfectly agree with the Chancellor, that it would be a repeal of the statute, to grant relief on account of any merits which affect the condition of the bond.

3. On the other ground, that the surety is discharged in consequence of the subsequent levy, we think it entirely clear there ought to be no relief.

We do not deem it necessary to examine principles or authorities to ascertain whether a plaintiff in execution can be restrained from proceeding against a surety where the property of the principal sufficient, to satisfy the debt, has been levied on, because we think this aspect of the present case is within the equity even if it is not within the express letter of one of our statutes.

The 6th section of the act of 1828, Aikin's Digest, 170 § 60, provides, that proceedings for the trial of the right of property, shall in no case prevent the plaintiff from going on to make his money out of other property than that levied on and claimed, if it can be found. It is impossible to consider the proceedings by Mrs. Calhoun in any other respect than a claim of property, and it is only because of her peculiar condition, as a *feme covert*, whose husband is the defendant in the execution, that her bill in equity, seeking to ascertain and enforce her right can be supported; because otherwise, it would be cognizable at law.

We have already shown that the right of the plaintiff in execution, was complete against the complainant, so soon as the forthcoming bond was returned forfeited, and the levy made under the second execution, must be considered as an original, to all intents and purposes. It is then the same to the plaintiff if a claim is interposed to this property, as it would be if any other estate had been levied on, and then claimed by some other person.

The decree of the Chancellor is affirmed, with costs.